UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| BARBARA MANEICE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action Number |
| ) | 00-C-3412-W |
| ) | |
| STILLMAN COLLEGE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**AMENDED MEMORANDUM OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In this case, Plaintiff Barbara Maneice claims that her former employer, Defendant Stillman College, terminated her employment because of her age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). Stillman College ("Stillman") has moved for summary judgment. (Doc. No. 13). Based on the undisputed facts, the Court concludes that Stillman is entitled to judgment as a matter of law.

I. The Undisputed Facts[1]

---

[1] "The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the record. These are the 'facts' for summary judgment purposes only. They may not be the actual facts. *See Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir.

Plaintiff was employed by Stillman College for twenty three years. She worked as a switchboard operator from 1976 until October of 1984, when she was transferred to the position of general clerk in the Office of Fiscal Affairs. In August, 1986, she was promoted to the position of cashier for the Office of Fiscal Affairs. Plaintiff held the cashier position until she was terminated on May 31, 1999.

On the date of her termination, Plaintiff was 46 years old.

The cashier position at Stillman required considerable interaction with the students, faculty, and staff members. Plaintiff's job duties included, but were not limited to, intake and receipting of tuition payments, disbursement of grant and scholarship funds, processing of transcript requests, cashing personal checks and money orders, maintenance of daily reports of transactions, and fielding of questions by students and parents regarding account information. Indubitably, the position required a pleasant and cooperative attitude, an ability to work well with others, good listening skills, and good communication skills.

There is no evidence of the quality of Plaintiff's performance in the cashier position prior to 1992. In 1994, she received the first of three written evaluations by her immediate supervisor, Phyillis Jones.[2] This first evaluation covered the period between 1992 and 1994. On the quantitative section of the evaluation, Plaintiff received a score of 68 points out of a possible 75. This placed her overall performance in the "excellent" category, which was

---

1994)." *Underwood v. Life Ins. Co. of Georgia*, 14 F. Supp. 2d 1266, 1267 n.1 (N.D. Ala. 1998).

[2]Ms. Jones appears to have been a close friend and co-worker of the Plaintiff since the mid-1970s.

the highest that could be earned. On the specific category of "[a]bility to cooperate with the supervisor, other employees and the students," Plaintiff received a score of 5 points, the highest that could have been earned.

Plaintiff received a second written evaluation in 1995. Based on the same point system, Plaintiff this time scored 59 aggregate points, placing her overall performance in the "good" category. On the specific axis of cooperation with the supervisor, students, or other employees, Plaintiff this time earned a score of 4 points out of a possible 5.

On the same date as her termination from Stillman in 1999, Plaintiff received her third and final written evaluation. Like the first two evaluations, this one was authored by Ms. Jones. Plaintiff received a rating of 2.25, in a range of 1 to 5 points - with one being the highest and 5 being the lowest. This rating placed her placing her fairly close to the "good" category. On this final evaluation, Plaintiff's interpersonal skills were not measured.

In September 1998, Dr. Ivy Locke, a woman over the age of 40, was hired by Defendant as Vice President for Fiscal Affairs. Dr. Locke was the direct supervisor of Phyllis Jones, Plaintiff's immediate supervisor. In her position as Vice President for Fiscal Affairs, Dr. Locke was responsible for the operation of the entire Office of Fiscal Affairs. When she assumed her new position, Dr. Locke sought to introduce to the employees under her charge a greater emphasis on customer service. Dr. Locke's service model was known as "the Disney Principles." The central feature of the Disney Principles is that it places the customer (in this case, the student) as the most significant actor in the service relationship.

During the course of the 1998-1999 academic year, a number of complaints were lodged against Plaintiff by Stillman students and their parents. The complaints related that Plaintiff was hostile and rude towards students, and often "dragged her feet" in responding to their requests or questions. Some of the complaints were made directly to Dr. Locke, while others were made to the Administrative Assistant for Fiscal Affairs, Aretha Johnson. Ms. Johnson swears that she personally witnessed several instances of Plaintiff's rudeness or inattentiveness towards the students. A number of Plaintiff's co-workers and former Stillman students submitted similar affidavits.

On May 31, 1999, Dr. Locke held a meeting at which Plaintiff and Phyllis Jones were present. According to Dr. Locke, Plaintiff's hostile temperament and inattention to customer service and "the Disney Principles" amounted to an irreconcilable "difference in philosophy." *See* Locke Depo. at p. 25. As a result, Dr. Locke unilaterally decided to non-renew Plaintiff's contract, thereby terminating her employment with Stillman at the end of the then-current academic year.[3]

After Plaintiff's termination, Dr. Locke hired a 22 year-old former Stillman student to fill the cashier position.

Plaintiff relies, among other things, on two statements made by in faculty/staff

---

[3]Plaintiff's employment with Stillman was governed by a letter agreement which was offered to Plaintiff (as well as all other staff members) on an annual basis. The letter stipulated that Plaintiff's employment with Defendant was "at will."

meetings by Dr. Ernest McNealey, the fairly new President of Stillman College. At one of these meetings President McNealey declared his long-term goal of producing a faculty "much closer to the age of the students than the one we now have." On another occasion, President McNealey stated that it was his initial desire to replace all senior staff as well as senior faculty who had administrative responsibility during the tenure of the former president of Stillman.

President McNealey did not participate in the decision to terminate Plaintiff's employment.

Under the Stillman College Staff Handbook, a progressive discipline policy is provided. Under this policy, a staff member is entitled to a warning, reprimand, and suspension before termination can occur. Plaintiff was never warned, reprimanded, or suspended for the attitude and conduct relied on by Dr. Locke as a basis for the non-renewal of her employment contract.

Stillman's progressive discipline policy only applies to a "for cause" termination specifically enumerated in the Handbook's section entitled "Rules, Regulations, and Discipline Procedures." "Poor customer relations skills" is not included in the enumerated categories that trigger progressive discipline. In any event, Dr. Locke did not believe that the policy applied to Plaintiff's termination. *See* Locke Depo. at p. 18. In her deposition, Dr. Locke appeared to cite several bases for her belief that the policy did not apply to Plaintff.[4]

---

[4] Dr. Locke stated that she didn't believe the procedures were "appropriate in her case." Locke Depo., at pp. 17-18. She seemed to base this conclusion both on her understanding that

There is no evidence as to whether the progressive discipline policy was followed in similar cases involving Stillman employees under the age of forty.

## II. Summary Judgment Standards

On a motion for summary judgment, the court assesses all of the proof the parties can bring to bear in order to ascertain whether a genuine need for trial exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is weighed heavily in favor of the non-movant; it is appropriate only if the court concludes that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party seeking summary judgment has the initial responsibility of informing the Court of the grounds for the motion and specifically identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

However, "Rule 56 . . . does not impose upon the district court a duty to survey the entire record in search of evidence to support a non-movant's opposition." *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996); *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden on the district court

---

Alabama is an "at will" employment state, as well as that Plaintiff was not practicing the "Disney Principles." As will be explained in greater detail *infra*, the "true" motivating factor behind Dr. Locke's decision not to follow the progressive discipline policy is a determination of little value in this case.

to distill every potential argument that could be made based upon the materials before it on summary judgment."), *cert. denied sub. nom.*, 516 U.S. 817 (1995).

Once the moving party has satisfied its initial burden, the nonmoving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." *Howard v. BP Oil Company,* 32 F.3d 520, 523 (11th Cir. 1994). In resolving whether a given factual dispute requires submission to a jury, a district court must view the record in the light most favorable to the nonmoving party and resolve all reasonable inferences in the nonmovant's favor. *Rooney v. Watson,* 101 F.3d 1378, 1380 (11th Cir. 1996) (citing *Hale v. Tallapoosa Co.,* 50 F.3d 1579, 1581 (11th Cir. 1995)).

### III. The Applicable Substantive Law

The ADEA makes it "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). A plaintiff may establish a *prima facie* case of age discrimination by direct evidence, circumstantial evidence, or statistical proof. The Eleventh Circuit has adopted the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dept. of Comm. Affairs v. Burdine,* 450 U.S. 248 (1981) to evaluate ADEA claims based on circumstantial evidence. *Chapman v. AI Transport,* 229 F.3d 1012, 1024 (11th Cir. 2000).

Under this framework, the plaintiff carries the initial burden of establishing a *prima facie* case. *Combs v. Plantation Patterns,* 106 F.3d 1519, 1527-28 (11th Cir. 1997). If the plaintiff satisfies her *prima facie* case, the burden then shifts to the defendant employer to articulate a legitimate, non discriminatory reason for the challenged employment action. *Id.* The employer's burden, however, is merely one of production. *Id.* at 1528 (quoting *Burdine,* 450 U.S. at 254-55).

Once the employer articulates one or more legitimate, nondiscriminatory reasons, the presumption of discrimination vanishes and "the plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Chapman,* 229 F.3d at 1024. Put another way, once the employer comes forward with a legitimate reason for the decision, the plaintiff must prove that the articulated reason is only a pretext for the prohibited discrimination.

In this Circuit, it is now firmly established that "a subjective reason can constitute a sufficient, legitimate, nondiscriminatory reason" for an employment action. *See Chapman,* 229 F.3d at 1033.

An employer's failure to follow an internal policy does not demonstrate pretext, particularly in the absence of additional evidence that the procedures were followed with respect to non-protected employees. *See, e.g., Brown v. Honda American Motor Co., Inc.,*

939 F.2d 946, 951-52 (11th Cir. 1991).

## IV. Analysis

Plaintiff concedes that there is no direct or statistical evidence of age discrimination.

According Plaintiff the favorable inferences to which she is entitled, it is clear that she has established a *prima facie* case of age discrimination. Stillman's argument that Plaintiff is not qualified for the job which she held is simply without merit. Surely, Stillman did not retain an unqualified cashier for a decade and three years.

Stillman has articulated a legitimate, non-discriminatory reason for Plaintiff's termination. It says that it non-renewed Plaintiff's contract because of numerous complaints about her attitude towards and treatment of its students, and her inattention to their needs – put another way, that her customer service skills were poor.

Therefore, Defendant has carried its burden of articulating a non-discriminatory reason for terminating Plaintiff's employment.

Plaintiff has wholly failed to establish that the articulated reason for the non-renewal of her employment contract was a pretext for age discrimination.

The comments of the President of the college are irrelevant, since the President played no part in the decision to non-renew her contract. Moreover, the comments are not evidence of an intent to discriminate against older staff personnel at Stillman. The first comment relates to *faculty* members, which do not include Plaintiff. The second statement reasonably can be interpreted only as a desire or intention by the new President to surround himself with

senior administrators and staff more loyal to him than to his predecessor.

Stillman College's failure to follow its progressive discipline policy is likewise void of evidence of pretext. Here, there is no evidence that the policy was followed by Stillman in situations involving employees under forty, but not followed in situations involving employees over forty. *See Brown v. Honda American,* 939 F.3d at 951-52.

Plaintiff's positive written evaluations do not speak to the articulated reason for the termination of her employment. The first two evaluations are too remote to be probative; the most recent evaluation does not purport to evaluate Plaintiff's interpersonal skills. The evaluations do not, in any way, call into question the *bona fides* of Dr. Locke's assessment, based on numerous contemporaneous complaints unrelated to Plaintiff's age, that Plaintiff's employment should not have been continued for another year.[5]

In short, there is insufficient evidence to rebut "head on" Defendant's proffered reason for non-renewing the employment contract of Plaintiff.

## Conclusion

Because the undisputed facts show that Plaintiff cannot rebut Defendant's legitimate, non-discriminatory reason for terminating her employment, and Defendant is therefore entitled to judgment as a matter of law, the Motion for Summary Judgment is due to be granted.

---

[5] The Court notes that, when asked in her deposition whether she she believed that Dr. Locke's decision to terminate Plaintiff was motivated by Plaintiff's age, even Phyllis Jones replied "I don't think so." *See* Jones Depo. p. 74.

These conclusions shall be embodied in a separate Order dismissing the case.

Done this 27th day of June, 2002.

*[signature]*

Chief United States District Judge
U.W. Clemon